IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE ELLERY, ) )    Petitioner, ) ) v. ) ) ) COMMISSIONER, SOCIAL SECURITY ) ADMINISTRATION, ) )    Respondent. ) _____) | Case No. CV 04-506-N-EJL REPORT AND RECOMMENDATION |

Currently pending before the Court is Dale Ellery's Complaint seeking review of the final decision of Respondent denying his applications for a period of disability, disability insurance benefits, and supplemental security income. The action is brought pursuant to 42 U.S.C. § 405(g).

Having carefully reviewed the record, and otherwise being fully advised, the Court enters the following Report and Recommendation pursuant to 28 U.S.C. § 636(b).

**I.**

**ADMINISTRATIVE PROCEEDINGS**

Dale Ellery ("Petitioner" or "Claimant") applied for a period of disability and disability insurance benefits under Title II and Title XVIII of the Social Security Act and for supplemental security income under Title XVI of the Act on August 6, 2002 (protective filing date). (AR 13, 66, 203). Petitioner alleged disability beginning May 24, 2002 as a result of extreme pain, numbness and loss of strength in both hands and neck or spine pain, and loss of sleep. (AR 78).

REPORT AND RECOMMENDATION - 1

Petitioner's applications were denied initially and again after reconsideration. (AR 28-33, 36-41). Petitioner filed a timely request for a hearing before an Administrative Law Judge ("ALJ").

ALJ R. J. Payne held a hearing on March 30, 2004 at which time Petitioner, represented by counsel, appeared and testified. (AR 257-78). Glen A. Almquist, M.D., a medical expert, also testified. (AR 252-56). A supplemental hearing was held on June 30, 2004, at which time Fred Cutler, a vocational expert, appeared and testified. (AR 221-39). On July 22, 2004, the ALJ issued a decision denying Petitioner's claim because he found Petitioner has the residual functional capacity to perform a significant range of light work and is able to perform his past relevant work as a cashier/checker. (AR 23). The ALJ made an alternative finding that Petitioner is not disabled because he could perform other work existing in significant numbers in the national economy as a fast food worker, cashier/checker, or assembly worker. (AR 22-23).

Petitioner thereafter requested the Appeals Council review the ALJ's decision. The Appeals Council denied Petitioner's request on September 4, 2004, making the ALJ's decision the final decision of the Commissioner of Social Security. (AR 7).

Having exhausted his administrative remedies, Petitioner timely filed the instant action. Petitioner argues that the ALJ failed to consider his spinal stenosis and properly determine whether that condition met or equaled a listing in Appendix 1, subpart P, section 1.04, and that the ALJ failed to disclose a complete hypothetical to the vocational expert that reflected all of Petitioner's impairments. *Pet'r Br.*, p. 5 (Docket No. 8). Petitioner requests that the ALJ's decision be reversed or, in the alternative, this matter be remanded so a complete hypothetical representing Petitioner's true limitations may be presented to the ALJ.

REPORT AND RECOMMENDATION - 2

## II.

## BACKGROUND

At the time of the hearing before the ALJ, Petitioner was forty-four years of age with a ninth grade education.  (AR 257, 261).  He has past work experience as a truck driver, cashier/checker, salvage laborer, and construction laborer.  (AR 14).

## III.

## STANDARD OF REVIEW

It is undisputed that the burden of proof rests upon Petitioner to establish entitlement to disability benefits.  *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999).  In evaluating the evidence at an administrative hearing, the ALJ must follow a five-part sequential process.  20 C.F.R. §§ 404.1520, 416.920 (1997).  The second part of that process involves a finding regarding whether or not the claimant has a "severe impairment."  20 C.F.R. § 416.905(a).  If no "severe" impairment is found, the claimant will be found not to be disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).

The standard on review is whether the decision of the Commissioner is supported by substantial evidence and is based on proper legal standards.  42 U.S.C. § 405(g); *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).  Findings of the ALJ as to any fact, if supported by substantial evidence, are conclusive.  42 U.S.C. § 405(g); *Vidal v. Harris*, 637 F.2d 710 (9th Cir. 1981).  In other words, if there is substantial evidence to support the decision of the ALJ, the decision must be upheld even when there is conflicting evidence.  *Hall v. Sec'y of Health, Educ. and Welfare,* 602 F.2d 1372, 1374 (9th Cir. 1979).

REPORT AND RECOMMENDATION - 3

Substantial evidence has been defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453 (9th Cir. 1995). The standard requires more than a scintilla but less than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S. Ct. 2541, 2550 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusion of the ALJ. *Richardson,* 402 U.S. at 401. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984), and drawing inferences logically flowing from the evidence. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. However, reviewing federal courts "will not rubber-stamp an administrative decision that is

inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987). Reviewing federal courts must bear in mind that the Social Security Act is remedial in nature and should be construed liberally and "not so as to withhold benefits in marginal cases." *Smith*, 820 F.2d at 1095 (citations omitted).

The issue presented in the instant appeal is whether the Appeals Council's finding that Petitioner was not disabled is supported by substantial evidence and whether it is based on application of proper legal standards.

## IV.

## DISCUSSION

### A.    Sequential Process

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920 (1997).

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity. If the answer is in the affirmative, disability benefits are denied. 20 C.F.R. § 404.1520(b). In the instant action, the ALJ concluded that Petitioner has not engaged in work activity since the alleged onset date. (AR 14).

The second step requires the ALJ to determine whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §404.1520(c). The ALJ found that Petitioner has degenerative arthritis of the cervical spine and bilateral carpal tunnel syndrome, status post surgery on the right. These impairments limit Petitioner's ability to work, and are

therefore considered severe as that term is defined and utilized under the Social Security Act and Regulations.  (AR 18).

The third step in the evaluation process requires the ALJ to determine whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1; 20 C.F.R. § 404.1520(d).  In this respect, the ALJ concluded that, although severe, Petitioner's impairment or combination of impairments does not meet or equal the severity of any impairment listed in appendix 1, Subpart P of Regulations No. 4.  (AR 18).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work.  20 C.F.R. § 404.1520(e).  In this respect, the ALJ concluded that Petitioner retains the residual functional capacity for a reduced range of light work, and that he could return to his past work as a cashier/checker.  (AR 21).

In the fifth step, once it has been established that Petitioner can no longer perform past relevant work because of his/her impairments, the burden shifts to the Commissioner to show that Petitioner retains the ability to do alternate work, and to demonstrate that such alternate work exists in significant numbers in the national economy.  In this respect, the ALJ stated that, assuming Petitioner could not return to his past relevant work as a cashier/checker, the ALJ would still find that Petitioner was not disabled because there is other work he could perform.  (AR 21).  The ALJ concluded that Petitioner retains the capacity for past relevant work as a cashier/checker, as well as for work that exists in significant numbers in the regional and national economy and is not under a disability as defined in the Social Security Act.  (AR 22).

**B.**     Analysis

1.     Listings of Impairments

Petitioner argues that the ALJ failed to consider his spinal stenosis and properly determine whether it met or equaled a listing in Appendix 1, subpart P, section 1.04.[1] *Pet'r Br.*, p. 6-7 (Docket No. 8). Petitioner's argument is based on an MRI performed on April 4, 2004–after the initial administrative hearing on March 30, 2004, but before the June 30, 2004 supplemental hearing. The ALJ reviewed this MRI and determined that it "revealed mild disk bulging at C4, C5, C5-6, C6, and C6-7, without significant encroachment on the foramen or spinal cord, and no change from June 2002." (AR 18). The ALJ also noted that the MRI "has shown no evidence of any nerve root compression." (AR 18).

For spinal stenosis to qualify under section 1.04, it must "result[] in compromise of a nerve root . . . or the spinal cord." 20 C.F.R., pt. 404, subpt. P, app.1, listing 1.04. The ALJ's finding of no "significant encroachment" is supported by the notes of Petitioner's treating physician, Dr. Phillip M. Dooley. (AR 18, 191). Dr. Dooley reported: "No significant encroachment on the foramen or spinal cord. No change from 06/02/2002." (AR 191). Additionally, Dr. Dooley's notes reflect impressions similar to those of the physician who

---

[1] The portions of section 1.04 relied on by Petitioner provide:
   1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including cauda equina) or the spinal cord. With:
   . . .
   C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

REPORT AND RECOMMENDATION - 7

initially reviewed the April 4, 2004 MRI, Dr. David E. Moody.  Although Dr. Moody noted that the disk protrusion at the C5-6 level results in "a mild central canal stenosis with mild bilateral neural foramina encroachment," he also found no significant central canal stenosis at the other disk bulges and stated that "[t]here does not appear to be a significant interval change compared to the MRI report from 6/2/2002."  (AR 193).

Moreover, Dr. Almquist, a medical expert who testified at the first administrative hearing, considered the June 2, 2002 MRI in rendering his opinion that Petitioner's impairments did not meet or equal a listing.  (AR 149-50, 245, 248, 255).  Because both Doctors Moody and Dooley found no significant change between the June 2, 2002 MRI and the April 4, 2004 MRI, (*see* AR 191, 193), the ALJ properly relied on Dr. Almquist's findings and opinions in determining that Petitioner's condition did not meet or equal any of the impairments in the listings (AR 17-18).[2]

Finally, Petitioner's assertion that the ALJ *found* that Petitioner does have "two levels of degeneration, but no compromise to the spinal cord" is not entirely accurate.  *Pet'r Br.*, p. 6 (Docket No. 8).  When the ALJ noted this, he was summarizing the testimony of Dr. Almquist from the first administrative hearing.  (AR 17).  As explained above, Dr. Almquist's findings were based, in part, on the June 2, 2002 MRI, the results of which did not change significantly in the April 4, 2004 MRI.

---

[2]  Petitioner acknowledges that, although he believes he met the first requirement of section 1.04 because he has spinal stenosis, "whether [he] has psuedoclausication cannot be evaluated based on the present record." *Pet'r Br.*, pp. 6-7 (Docket No. 8).  Thus, even if Petitioner has spinal stenosis, he cannot demonstrate that he met the second requirement of section 1.04.  It is Petitioner's burden to prove that he is disabled within the meaning of the Social Security Act. *Tackett v. Apfel*, 180 F.3d 1094, 1098-9 (9th Cir. 1999).

REPORT AND RECOMMENDATION - 8

In summary, the ALJ properly considered all the medical evidence in making his determination that Petitioner's condition does not meet a listing. (*See* AR 14-18). The ALJ's description of Petitioner's impairments are "accurate, detailed, and supported by the medical record." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999).

2.  Hypothetical Question Posed to Vocational Expert

Petitioner next argues that the ALJ failed to pose a complete hypothetical to the vocational expert that reflected all of Petitioner's impairments. Specifically, Petitioner argues that because the ALJ failed to evaluate his spinal stenosis, he "could not reasonably pose an accurate hypothetical to the vocational expert." *Pet'r Br.*, at 7 (Docket No. 8). Because the Court has rejected Petitioner's claim that the ALJ failed to properly consider his spinal stenosis, his claim that the hypothetical was incomplete also fails. It is proper for an ALJ to limit a hypothetical to only those restrictions of a particular claimant that are supported by substantial evidence in the record. *Magallanes*, 881 F.2d at 756-57.

The ALJ based the hypothetical primarily on Dr. Almquist's assessment of Petitioner's limitations. (AR 168-74, 227-29). As noted above, although Dr. Almquist did not consider Petitioner's April 4, 2004 MRI when assessing Petitioner's limitations, both Doctors Moody and Dooley reported no significant change from the June 2, 2002 MRI to the April 4, 2004 MRI, and Dr. Almquist considered the June 2, 2002 MRI. The ALJ credited Dr. Almquist's assessment of Petitioner's limitations over that of Dr. Dooley because the notes from Dr. Dooley's physical examinations of Petitioner failed to supported the limitations found by Dr. Dooley, Dr. Dooley did not feel that Petitioner had a true pain behavior problem, and Dr. Dooley is not an orthopedist. (AR 20). Additionally, the ALJ found Petitioner not fully credible because of the

REPORT AND RECOMMENDATION - 9

many tasks he performs daily despite his claimed pain, the lack of medical evidence to support some of his claims, and his failure to abide by some of his physician's recommendations. (AR 19). The ALJ properly considered inconsistencies between Petitioner's testimony and his daily activities, as well as testimony from physicians concerning the nature, severity, and effect of the symptoms of which Petitioner complains. *See Light v. Soc. Security Admin.*, 119 F.3d 789, 791 (9th Cir. 1997). Because the ALJ is in the best position to make credibility determinations, his credibility determination is entitled to great weight. *Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir. 1990).

Moreover Petitioner's claim that "[t]he hypothetical posed to the vocational expert was void of many of the important physical limitations presented by Petitioner" amounts to a generalized assertion that does not meet his burden of demonstrating that he has any specific functional limitations resulting from his medically determinable impairments in addition to those considered by the ALJ. Because the ALJ included all of the limitations that he found to exist, and because his findings were supported by substantial evidence, the Court concludes that he did not err in omitting from the hypothetical question Petitioner's claimed limitation.

## V.

## CONCLUSION

Although there is some evidence tending to support Petitioner's position, Petitioner's primary contentions appear to be that the ALJ gave too much weight to the evidence upon which he relied and did not give enough weight to other evidence favorable to Petitioner. However, as the Court has discussed, the ALJ is the fact finder and is solely responsible for weighing and drawing inferences from facts and determining credibility. *Allen*, 749 F.2d at 579; *Vincent on*

*Behalf of Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642.  If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, the Court may not substitute its interpretation for that of the ALJ.  *Key*, 754 F.2d at 1549.  The Court finds that the evidence upon which the ALJ relied can reasonably and rationally be relied upon to support his conclusion, despite the fact that such evidence may be susceptible to a different interpretation.

The Court concludes that the Commissioner's determination that Petitioner is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record and is based upon an application of proper legal standards.  Accordingly, the Court will not substitute its interpretation or judgment for that of the ALJ in reaching his decision and the Commissioner's decision should be upheld.

## VI.

## RECOMMENDATION

Based on the foregoing, this Court recommends that the District Court enter an order affirming the Commissioner's decision and dismissing this action in its entirety with prejudice.

Written objections to this Report and Recommendation must be filed within ten (10) days pursuant to 28 U.S.C. § 636 and District of Idaho Local Civil Rule 72.1.  If written objections are not filed within the specified time, the right to raise factual and/or legal objections in the Ninth Circuit Court of Appeals may be waived.

DATED:  **November 30, 2005**.

Honorable Larry M. Boyle
Chief U. S. Magistrate Judge